# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DWAYNE FREEMAN,

       Plaintiff,

v.

TONIA ROSMARYNOSKI,
ALEJANDRO MARTINEZ, and JEAN
LUTSEY,

       Defendants.

Case No. 17-CV-958-JPS

**ORDER**

**1. INTRODUCTION**

  Plaintiff's amended complaint, his operative pleading, claims that he slipped and fell on a wet floor while he was incarcerated at Green Bay Correctional Institution ("GBCI"). (Docket #6). He accused Defendants of both intentionally failing to clean the floor before his fall and of neglecting to adequately treat his injuries after the fall. *Id.* On September 11, 2017, District Judge Pamela E. Pepper screened Plaintiff's amended complaint. (Docket #12). She allowed Plaintiff to proceed on three claims.

  First, Plaintiff was permitted to proceed on a claim of deliberate indifference to his medical needs after the fall against Defendants Tonia Rosmarynoski ("Rosmarynoski") and Alejandro Martinez ("Martinez"), GBCI correctional officers. *Id.* at 5–6. Second, Plaintiff was allowed to pursue a deliberate indifference claim against Defendant Jean Lutsey ("Lutsey"), GBCI's Health Services Manager, for inadequately addressing his post-fall injuries. *Id.* at 6. Finally, Plaintiff was permitted to sue Rosmarynoski and Martinez under state law for refusing to remedy the floor's slippery condition before the fall. *Id.*

On May 1, 2018, Defendants filed a motion for summary judgment. (Docket #26). Plaintiff sought and was granted leave to file his responsive materials by the end of June 2018. (Docket #42). Nevertheless, on June 5, 2018, Plaintiff responded to Defendants' statement of facts, (Docket #43), and also filed an affidavit in response to the motion, (Docket #45). Defendants assumed that this was the entirety of Plaintiff's response and treated the affidavit as a legal brief. They replied to Plaintiff's June 5 submissions on June 20, 2018. (Docket #46). Plaintiff then filed his actual legal brief on June 27, 2018, as well as an amended affidavit. (Docket #48 and #49). Despite the convoluted state of the briefing on Defendants' motion, the Court believes that the parties have been fully heard and that the motion is ripe for decision.[1] For the reasons explained below, Defendants' motion must be granted and this action dismissed.

## 2. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[1]Plaintiff filed two extraneous motions during the briefing process. The first was to strike Defendants' reply as premature. (Docket #47). The motion will be denied. Defendants were entitled to reply *after* they received Plaintiff's June 27 legal brief but chose not to do so. That they filed their reply early serves only to help Plaintiff, not hurt him. Plaintiff's second motion, submitted along with his June 27 legal brief, was to amend his response as to one of Defendants' statements of fact. (Docket #50). Though it is procedurally improper—parties are not generally allowed to amend summary judgment materials once submitted—the Court will grant the motion, as Defendants have not opposed it, and it does not change the result of this Order.

242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

3.  **RELEVANT FACTS**

The following facts are drawn from the parties' factual briefing. (Docket #31 and #43). The Court notes that most of Plaintiff's purported disputes of fact are procedurally improper, as they cite no evidence at all, or are comprised of improper objections. *See, e.g.,* (Docket #43 ¶¶ 4, 7). Thus, the facts the Court recites here may not coincide with the facts as Plaintiff believes them to be. As explained in the Court's analysis section below, even when Plaintiff's procedural errors are excused, Defendants remain entitled to summary judgment.

At all times relevant, Plaintiff has been incarcerated at GBCI. On May 31, 2016, Rosmarynoski was working in Plaintiff's cell hall. At some point, she was informed that Plaintiff had fallen; she did not witness it herself. A supervisory correctional officer and medical personnel were the first to respond to the incident. Plaintiff complained to them of lower back pain and that he had hit his head. Rosmarynoski also called for medical assistance. Plaintiff was taken by a wheelchair to the infirmary where he was seen by a nurse. He returned to his cell hall within fifteen minutes.

According to Rosmarynoski, who later reviewed some security camera footage of the fall, Plaintiff did not appear to hit his head. Further, the video showed only a small spot of water on the floor, possibly from a few melted ice cubes. Plaintiff claims that he and many other inmates saw a "large puddle of water." (Docket #43 ¶ 12). Rosmarynoski claims that she

had no knowledge of such a puddle. Plaintiff counters that several inmates warned her about the puddle, but Rosmarynoski responded dismissively, which she denies. Rosmarynoski states that if she had seen the puddle, she would have directed inmate workers to mop it up.

Though Plaintiff alleges in his amended complaint that Martinez was with Rosmarynoski, Martinez does not recall being present for Plaintiff's fall. Martinez nevertheless avers that if he had seen Plaintiff fall, he would have asked if Plaintiff was alright and would likewise have called for medical assistance if necessary. Martinez further states that if he had seen or been made aware of water on the floor, he would have done the same as Rosmarynoski.

Plaintiff was seen by various nurses from the day of the incident until March 2017 (most of the visits occurred in June and July 2016) for his alleged back pain. Plaintiff also met with doctors on multiple occasions. Plaintiff filed grievances about his unhappiness with the medical care he received. Such grievances are processed through the Inmate Complaint Review System ("ICRS"). When a medical grievance is received, the inmate complaint examiner ("ICE") has the option to contact the health services manager with questions regarding the inmate's medical file and treatment. In Plaintiff's case, Lutsey was contacted by GBCI's ICE about two of Plaintiff's grievances.

In response, Lutsey reviewed Plaintiff's medical file. She noted that Plaintiff had been seen many times by various medical providers and that his treatment was ongoing. Lutsey deferred to the treatment plans of those providers because she felt they were appropriate in light of her review of Plaintiff's medical records. Lutsey did not believe that Plaintiff's medical needs were being inadequately addressed. Plaintiff counters that she

should have investigated further. Plaintiff also contends that Lutsey should have noticed a procedural defect in the grievance process. He states that prison policy requires medical grievances to be submitted to the Director of the Bureau of Health Services ("BHS") once they are investigated by the ICE. Plaintiff claims that this was not done for his grievances.

Lutsey does not normally provide direct medical care to inmates and she does not recall being contacted by Plaintiff directly about his care. She also generally delegates to nurses the task of responding to inmate requests for medical treatment. She directly responded to only one of Plaintiff's health services requests related to payment of a co-pay. Lutsey generally defers to doctors to make medical decisions. If she was concerned about a doctor's treatment plan, she would discuss it with them. If the discussion was unsatisfactory, Lutsey could then speak to the doctor's superior within the medical staff. Plaintiff maintains that it was Lutsey's responsibility to take a more active role in addressing his medical care.

4.   **ANALYSIS**

Defendants offer a series of arguments for dismissal of each of Plaintiff's claims. The Court will address each claim in turn. It pauses here to note that throughout his briefing, Plaintiff seems insistent on making arguments as to claims upon which he was *not* permitted to proceed. These include a constitutional claim against Rosmarynoski and Martinez for failing to clean up the puddle, as well as complaints against treatment providers other than Lutsey. The Court has duly ignored these extraneous contentions and restricts its analysis to the claims which are actually present in the case.

### 4.1 Rosmarynoski and Martinez

#### 4.1.1 Deliberate Indifference

The Eighth Amendment secures an inmate's right to adequate medical care. Prison officials violate that right if they exhibit deliberate indifference to an inmate's serious medical needs. *Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 422 (7th Cir. 2017). To show deliberate indifference, a plaintiff must prove that "(1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating [him]; and (3) this indifference caused [him] some injury." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

With regard to the deliberate indifference prong, the plaintiff must show that the defendant acted with the requisite culpable state of mind. *Id.* This entails a showing that the defendant had "subjective knowledge of the risk to the inmate's health" and the defendant "disregard[ed] that risk." *Id.* In other words, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Even if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted." *Id.*

Plaintiff has not offered evidence from which a reasonable jury could conclude that either Rosmarynoski or Martinez were deliberately indifferent to his medical needs. A number of observations inform this conclusion. First, Plaintiff was not allowed to proceed on a deliberate indifference claim with respect to the fall itself. Rather, he was permitted to advance a claim that his subsequent medical care was inadequate. Thus, any conduct preceding the fall is irrelevant for present purposes.

Second, Plaintiff's failure to properly dispute many of Defendants' proposed facts leaves the Court with two different versions of events. In Plaintiff's version, as described in his amended complaint and affidavits submitted with his summary judgment materials, Rosmarynoski and Martinez saw Plaintiff fall, but told him to get up and stop faking his injuries. (Docket #6 at 3–4). After twenty minutes, the officers called for medical assistance. *Id.* at 4–5. In Defendants' version, which is supported by the evidence presented in accordance with the rules of summary judgment procedure, other prison officials, including medical personnel, were the first to respond to Plaintiff's fall. Rosmarynoski nevertheless also called for medical assistance. Martinez was not present at all.

Under Defendants' version of events, neither officer was deliberately indifferent. Rosmarynoski was not the first to know of Plaintiff's fall, but once she was made aware of it, she still independently called for medical help. Martinez could not be liable because he was not there. But even under Plaintiff's version of events, the officers' conduct demonstrates that they were not subjectively aware of a serious risk of harm to Plaintiff. Rather, their statements telling Plaintiff to stop faking reveals that they thought he was not actually injured. *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 683–84 (7th Cir. 2012) (sincere belief that inmate was malingering does not support a conclusion that a nurse was deliberately indifferent to an inmate's medical needs). Plaintiff does not dispute that Defendants' belief in this regard was sincere. Plaintiff counters that the officers should have realized that his fall could have caused debilitating spinal injuries or paralysis, but this assertion is irrelevant. The officers' belief that Plaintiff was faking thwarts any finding of the subjectively culpable state-of-mind required for Eighth Amendment liability. And, moreover, Plaintiff's

argument rests on factual contentions he failed to appropriately present to the Court.

Finally, and again under Plaintiff's version of events, he was not denied medical care entirely. The sole basis for his claim is that the alleged twenty-minute delay in receiving care caused him injury. But Plaintiff has not produced medical evidence that the *delay*, as opposed to the fall itself, exacerbated his injuries. *Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007) ("In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer verifying medical evidence that the delay (rather than the inmate's underlying condition) caused some degree of harm. . . . That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental.") (citations and quotations omitted). In any event, it does not seem that such evidence could be produced. Plaintiff was seen by a nurse, provided ice and over-the-counter pain medication, and returned to his cell within fifteen minutes. If the delay had caused him meaningful harm, Plaintiff would likely have needed more than a brief check-up.[2]

The Court closes by noting that in his summary judgment materials, Plaintiff claims for the first time that Rosmarynoski and Martinez not only failed to appropriately address his fall-related injury, but inflicted their own injuries on him, namely psychological harm. In his response brief, Plaintiff asserts that Rosmarynoski "intended to humiliate and inflict psychological pain" on him when she yelled at him to stop faking, while Martinez did nothing to stop her. (Docket #48 at 11). In his amended complaint, however,

---

[2]Plaintiff also argues that Rosmarynoski violated prison policy by delaying her call for medical help by twenty minutes. But a violation of prison policy is not the equivalent of deliberate indifference. *Schroeder v. Sawall*, 747 F. App'x 429, 431 (7th Cir. 2019) (citing *Lewis v. Richards*, 105 F.3d 549, 553 n.5 (7th Cir. 1997)).

Plaintiff makes no mention of psychological torment, only physical pain. (Docket #6 at 4–5). Plaintiff cannot add these new factual allegations, thereby effectively amending his pleading, in response to a motion for summary judgment. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017).

### 4.1.2 Negligence

Plaintiff's negligence claim proceeds under Wisconsin law. Wisconsin has limited the liability of state employees by requiring potential plaintiffs to file notices of their claims with the Wisconsin attorney general prior to initiating a lawsuit. The statute provides, in pertinent part:

> [N]o civil action or civil proceeding may be brought against any state officer, employee or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employee's or agent's duties, . . . unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employee or agent involved.

Wis. Stat. § 893.82(3). The statute demands strict compliance. *Id.* § 893.82(2m). Failure to comply requires dismissal of the claim. *Weinberger v. State of Wis.*, 105 F.3d 1182, 1188 (7th Cir. 1997) ("A complaint that fails to show compliance with § 893.82 fails to state a claim upon which relief can be granted."). "There is no equitable basis for partial or 'substantial' compliance[.]" *Id.* (citing *Oney v. Schrauth*, 541 N.W.2d 229, 233 (Wis. Ct. App. 1995)).

Defendants admit that Plaintiff served a notice of claim related to this case. (Docket #35-1). They note, however, two fundamental problems

with the notice. First, it fails to mention Rosmarynoski at all. Second, while Martinez's name is stated, he is identified only as a witness to the fall. The notice does not explain how Martinez was involved in or contributed to cause the fall. *See* Wis. Stat. 893.82(3) (a proper notice must state "the time, date, location and the circumstances of the event giving rise to the claim . . . and the names of persons involved."). Because the statute specifically calls for strict compliance, these faults in the notice doom Plaintiff's negligence claim.

Plaintiff's arguments to the contrary do not avoid this result. He first suggests that the statute at issue is not Section 893.82, but instead 893.80(1m), which relates to claims for medical malpractice. Plaintiff is wrong; Rosmarynoski and Martinez are not medical personnel and the claim against them is for ordinary negligence. Second, Plaintiff states that he did not know Rosmarynoski's name at the time the notice was filed. Although the statute specifically calls for strict compliance, Wisconsin courts suggest that such compliance may be achieved even without the responsible official's name, so long as the claimant exercised reasonable diligence to discover the official's identity. *Modica v. Verhulst*, 536 N.W.2d 466, 473–74 (Wis. Ct. App. 1995). Plaintiff claims that he attempted to learn Rosmarynoski's name by asking other guards, but they refused to provide it, and that he could not make a public-records request to learn her name. This falls short of reasonable diligence. Plaintiff could have filed an inmate grievance on the matter or made some other formal request for information. If those efforts had been unsuccessful, then perhaps the Court could find an appropriate level of diligence. Further, the notice fails to even suggest Rosmarynoski's existence. It does not identify the person responsible for Plaintiff's injury in any manner, even by a John or Jane Doe designation.

Thus, the notice would be improper even if it had included Rosmarynoski's name.[3]

### 4.2 Lutsey

Defendants argue that Plaintiff failed to exhaust his administrative remedies as to the claim against Lutsey, a task required before a prisoner can sue in federal court, and in any event, she was not deliberately indifferent to Plaintiff's medical needs. The Court need not weigh into the parties' dispute as to the former argument, because the latter argument has not been genuinely disputed. Plaintiff's claim against Lutsey fails for the same reason as his claims against Rosmarynoski and Martinez—he has offered no evidence that she was subjectively aware of a risk of harm. Indeed, the claim against Lutsey is even weaker than that against the other two defendants. It is undisputed that, as requested by the ICE, Lutsey reviewed Plaintiff's medical file. In doing so, Lutsey determined that Plaintiff was being afforded appropriate and adequate medical care. Lutsey's belief precludes any reasonable jury from finding that she was deliberately indifferent to Plaintiff's medical needs. In the end, Plaintiff merely disagrees with Lutsey's assessment. That is no basis for finding deliberate indifference on her part. *Berry v. Peterman*, 604 F.3d 435, 441 (7th

---

[3]In his response brief, Plaintiff does not argue that Martinez was adequately identified. He did include such an argument in his response to Defendants' statement of facts. (Docket #43 at 12). Even if the Court generously considered this out-of-place legal argument, it changes nothing. Plaintiff states that identifying Martinez as a witness was sufficient because it "impl[ied] [that] Martinez was a witness to the water and did nothing to prevent harm" to Plaintiff. *Id.* First, the Court reiterates that the statute requires strict compliance. Allowing a notice to satisfy the statute by implication contradicts that directive. Second, the notice actually states that Martinez and others witnessed "[t]his incident," namely the fall itself. The notice does not demonstrate that Martinez knew about the puddle or was responsible for creating it.

Cir. 2010) ("Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference in violation of the Eighth Amendment.").

## 5. CONCLUSION

Plaintiff presented some evidence on summary judgment in the form of affidavits and a limited set of exhibits. He nevertheless failed to appropriately dispute many of the facts relevant to Defendants' motion. Regardless, under either set of facts, Defendants are entitled to judgment on each of Plaintiff's claims. The Court must, therefore, grant their motion and dismiss this action with prejudice.

Accordingly,

**IT IS ORDERED** that Defendants' motion for summary judgment (Docket #26) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to amend his response to Defendants' statement of facts (Docket #50) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to strike Defendants' reply (Docket #47) be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 18th day of March, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge